## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD T. PARMLEE, *Plaintiff*, v. OFFICER OF ATTORNEY GENERAL & DEPARTMENT OF REVENUE SERVICES, *Defendants*. | No. 3:21-cv-01292 (MPS) |

## RULING ON MOTION TO DISMISS

Richard Parmlee, who is representing himself, has sued the Connecticut Department of Revenue Services ("DRS"), the Connecticut Attorney General's Office (the "OAG"), and a long list of individual defendants. His core claim, which is set forth on a form entitled "Complaint for A Civil Case Alleging Breach of Contract," is that DRS, his former employer, breached a settlement agreement with him by which an earlier lawsuit brought by him was resolved, and that the OAG assisted DRS in doing so. He also alleges that DRS and "members" of the OAG conspired to have him placed in jail for non-payment of child support and that his employment with DRS was terminated in retaliation for filing an earlier complaint. His complaint invokes other legal provisions as well, including Title VII, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), laws prohibiting forgery, and common law torts such as fraud and slander.

After counsel from the OAG appeared on behalf of DRS[1] and filed a motion to dismiss the complaint (ECF No. 20) under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on several grounds, the Court gave Parmlee an opportunity to amend his complaint to address the alleged defects discussed in DRS's memorandum of law. (ECF No. 25.). Parmlee did not amend the complaint and has filed no response to the motion to dismiss, although in another filing he has indicated that he opposes the motion. (ECF No. 28 at 3 ("Plaintiff agreed to stay discovery however not to the motion to dismiss the complaint ….")). For the reasons set forth below, the Court GRANTS the motion and dismisses the complaint with prejudice.

## I.     Factual Allegations

The complaint alleges the following facts, which the Court accepts as true for purposes of this ruling.

Parmlee, who was then a DRS employee, entered into a settlement agreement with DRS on August 25, 1994, to resolve a lawsuit he had brought against the agency arising from his employment. Under the agreement, DRS was to pay Parmlee a total of one hundred fifty thousand dollars—forty thousand for him and his attorney and the remainder to cover his back child support obligations and provide him with the necessary training to become a DRS revenue agent. ECF No. 1 at 4. In return for his release, DRS also agreed to promote him, give him a new title and labor grade, and "compensate [him] one hundred and fifty thousand dollars with conditions." *Id.* at 13.

While it paid the forty thousand, DRS, along with "members" of the OAG, breached the settlement agreement by failing to pay the remainder. DRS and members of the OAG also

---

[1] The appearance form indicates that counsel appears on behalf of DRS only (ECF No. 10), but given that counsel is an Assistant Attorney General, the Clerk's Office properly treated the appearance as on behalf of the two agencies. For simplicity in this memorandum, I will refer to the appearing defendants as "DRS."

"conspired" to have Parmlee placed in jail for non-payment of child support. Instead of promoting him, it denied him the promised pay grade, terminated him "as a form of retaliation for filing the complaint," and "blacklisted" him for the "pas[t] two decades." *Id.* at 4, 15.

Parmlee also alleges that DRS refused to provide him with a copy of the signed agreement and showed him "an altered copy of another written instrument claiming to be the content of the settlement agreement," which "gave rise [to] forgery." *Id.* at 18. He also alleges that, around March of 1995, his "wage garnishment had a sudden increase in deductions of one hundred dollars per week." *Id.* at 20. Although this is not entirely clear, the wage garnishment apparently related to his child support obligations, and he suggests that "the Attorney Generals" somehow orchestrated the increase, and ultimately "illegally detained him in a jail cell" in Bridgeport for two and a half weeks for non-payment of child support. *Id.* at 22.

With regard to the alleged "blacklisting," Parmlee alleges that "anywhere [he] would apply," he would not receive a callback after the prospective employer did a background check. He alleges that "[t]his indicated that [he] was being blacklisted as an act to prevent [him] from obtaining funds to acquire an attorney to represent him in his future case by those conspiring with the" OAG. *Id.* at 25.

## II. Legal Standard

DRS has moved to dismiss Parmlee's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction. The Court must dismiss an action for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In adjudicating a motion to dismiss under Rule 12(b)(1), the court "accept[s] all of the plaintiff's factual allegations in the complaint as true and draw[s] inferences from those

allegations in the light most favorable to the plaintiff." *Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003).[2]

Under Rule 12(b)(6), the Court likewise takes the plaintiff's factual allegations in the complaint "to be true and [draws] all reasonable inferences in" its favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Generally, *pro se* plaintiffs are "entitled to special solicitude," and courts must interpret their submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). However, "the Court need not engage in 'rank speculations' to manufacture a federal claim for *pro*

---

[2] The Second Circuit has not always been clear on this point, stating, at times, that on a Rule 12(b)(1) motion, the court should *not* draw inferences in the pleader's favor. *Compare McGinty v. State*, 193 F.3d 64, 68 (2d Cir. 1999) (in reviewing dismissal under Rule 12(b)(1), "we must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to plaintiffs") *with Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.") and *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) ("On appeal of the district court's order on the motion to dismiss [under Rule 12(b)(1)], we must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs."). In *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), the court suggested that these different statements were reconcilable, although it did not explain how: "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff [on a Rule 12(b)(1) motion], "but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* at 170. In any event, in this ruling, I take as true the allegations in Parmlee's complaint and draw all reasonable inferences in his favor.

*se* plaintiffs." *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-1470 CSH, 2014 WL 2475893, at *5 (D. Conn. June 3, 2014).

    **III.**    **Discussion**

        ***A. Breach of Contract and Other Claims Against the DRS and OAG (Rule 12(b)(1))***

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims brought against state agencies unless the State has consented to be sued in federal court or unless Congress has abrogated the State's Eleventh Amendment immunity. *See Helgason v. Doe*, No. 10 CIV. 5116 PAC JCF, 2011 WL 4089943, at *3 (S.D.N.Y. Sept. 13, 2011) ("The Eleventh Amendment prohibits federal court jurisdiction over state governments 'unless they have waived their Eleventh Amendment immunity, [or Congress has] abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment'" (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). The jurisdictional bar of the Eleventh Amendment applies to state law claims against state agencies, including claims for breach of contract like the one here. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."). Although there is an exception to the jurisdictional bar of the Eleventh Amendment for claims brought against state officials in their official capacity to redress ongoing violations of federal law, nothing in Parmlee's complaint suggests that there are any ongoing violations of federal law. Indeed, as DRS notes in its motion, most of Parmlee's allegations relate to events over two decades old. Therefore, the breach of contract claim, any other state law claims, any Section 1983 claim (which would include any First Amendment retaliation claim), and the RICO claim are all dismissed for lack of jurisdiction under Rule 12(b)(1). *See Dube v. State Univ. of N.Y.,* 900 F.2d

587, 594 (2d Cir.1990) (Eleventh Amendment bars § 1983 claims against state government); *Morabito v. New York*, 803 F. App'x 463, 465 (2d Cir.), *as amended* (Feb. 27, 2020), *cert. denied*, 141 S. Ct. 244 (2020) (finding that district court properly dismissed plaintiff's § 1983 claims against state government, state agency, and state official in his official capacity as barred under the Eleventh Amendment); *Molina v. State of N.Y.*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995) (dismissing plaintiff's RICO claim against state government as barred under the Eleventh Amendment); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390–91 (E.D.N.Y. 2013) (dismissing plaintiffs' RICO claims against state government and state agency as barred under the Eleventh Amendment).

### B. *Individual Defendants (Rule 12(b)(6))*

Parmlee's complaint includes a lengthy "list of co-conspirators as players," all of whom he intends to name as defendants. *See* ECF No. 1 at 2 (stating "see list of players for additional defendants" on line next to "Defendant No. 3"), 6–10 (listing individual defendants). These include individuals who were employed at state agencies, including DRS, OAG, and others, as well as two judges of this Court (one of whom is retired) and two attorneys in private practice. *Id.* at 6–10. In spite of instructions in the complaint form directing him to "[s]tate how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct," *id.* at 4, the complaint sets forth no facts that indicate what any of these individuals did or did not do that wronged Parmlee. Instead, it attaches conclusory labels to different groups of these defendants. For example, it dubs a long list of employees (or former employees) of three State agencies—the "Administrative Division," the Commission on Human Rights, and the Department of Administrative Services—as "players who will be charged with employment discrimination" and other wrongs, and further

describes them as either "accessor[ies] after the fact for those who participated in the act and concealment" or "accessor[ies] before the fact for those who participated in the act of planning the discrimination …." *Id.* at 6. Even when read through the indulgent lens applicable to pro se pleadings, these descriptions do not indicate, except in the most conclusory sense, what actions any of these defendants took, when they took them, where they took them, or how they affected Parmlee. Because Parmlee has not made any factual allegations that any of the individuals listed was a party to his contract with DRS or has committed any wrongs against him, he has alleged no plausible claims against the individuals and all such claims are dismissed under Rule 12(b)(6). Further, as the bulk of his complaint is devoted to his core breach of contract claim and the circumstances of the settlement of his employment dispute with DRS make it implausible that any individual would have been a party to the settlement agreement, the Court does not see how he could plead plausible claims against the individuals based on the facts he has alleged. Finally, as it is apparent from the complaint that Parmlee intended to name as defendants all the individuals listed on pages 6 through 10, *see* ECF No. 1 at 2, 6-10, the Clerk shall correct the docket to list all such individuals as defendants and shall reflect on the docket that the complaint has been dismissed as to all of them.

### C. Title VII (Rule 12(b)(6))

Congress has abrogated Eleventh Amendment immunity for Title VII claims, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 452 (1976), and so the Eleventh Amendment would not be a bar to a Title VII claim. Although the complaint mentions Title VII, it does not appear to allege a violation of that statute; rather, as noted, it appears to allege a breach of the settlement agreement related to an earlier Title VII claim brought by Parmlee. Even if I construed the allegations about retaliation as alleging a Title VII violation, however, there is another flaw in the Title VII claim

that would require dismissal here.  As DRS points out in its motion to dismiss, Parmlee's complaint is barred by the doctrine of res judicata.[3]  *TechnoMarine SA v. Giftports, Inc.*, 785 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice.").  "Under the doctrine of *res judicata,* or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. To prove the affirmative defense of *res judicata* a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* at 499 (internal quotation marks, citations, and alterations omitted).

      This is not Parmlee's first foray into federal court in his long-running battle with DRS.  The most pertinent portion of the history of that battle is recounted in Magistrate Judge Fitzsimmons's August 23, 2001 ruling granting DRS's and other defendants' motion for summary judgment against Parmlee.  *See Parmlee v. State of Connecticut Dept. of Revenue Servs.*, 160 F. Supp.2d 294 (D. Conn. 2001).  That ruling discusses his first lawsuit, filed in 1990, and its resolution by settlement agreement in August 1994—the same settlement agreement that he is now alleging DRS breached—and his claim of an "alteration" or "forgery."  *See id.* at 296 (noting, among other things, that "Parmlee now alleges that the document he signed was not the settlement agreement filed with the court").  Indeed, Judge Fitzsimmons expressly addressed and rejected in her ruling many of the same claims that Parmlee now makes: "the Court finds as an initial matter that all

---

[3] DRS is incorrect, however, in arguing that res judicata affects the Court's jurisdiction.  ECF No. 20-1 at 15.  Res judicata is an affirmative defense to liability, Fed. R. Civ. P. 8(c)(1), and it thus goes to the merits of a claim, not the Court's jurisdiction.

of Parmlee's allegations related to the 1994 settlement agreement, such as his claims for fraud, conspiracy, forgery, and breach of contract, fail to state a claim under Title VII. Even if these allegations stated a viable claim under Title VII, the Court holds the claims are time-barred because the events giving rise to these claims occurred more than 300 days before Parmlee filed his claims with the CHRO and EEOC." *Id.* at 300. This language makes clear not only that Judge Fitzsimmons rejected Parmlee's "breach of contract," "forgery," and "conspiracy" theories as bases for a Title VII claim, but also that he could have raised those theories as independent claims—the same claims he is now apparently trying to assert in this action—in that action. As noted, res judicata bars claims "asserted in the subsequent action [that] were, or *could have been*, raised in the prior action." *TechnoMarine SA*, 785 F.3d at 499 (emphasis added). Judge Fitzsimmons also specifically rejected Parmlee's retaliation claim:

> The Court finds that Parmlee has not made a *prima facie* showing because he has failed to establish a causal connection between the adverse action and his protected activity. Although defendants do not focus on this element, Parmlee provided no evidence that the employment decisions followed close in time to the protected activity, that he was treated differently after the complaint, or that other similarly situated employees were treated more favorably after he engaged in the protected activity. Without such evidence, the court cannot find a causal connection between the protected activity and the adverse employment action. Therefore, Parmlee's retaliation claim also fails.
> …
> Parmlee's remaining retaliation claims against DRS also fail. Parmlee alleged that other specific retaliatory acts committed by DRS included: labeling him a whistle blower; giving false and derogatory references about plaintiff after he was fired; monitoring those employees who complained of discrimination, including plaintiff, and subjecting them to further harassment; and placing plaintiff's picture at DRS security checkpoints in order to destroy his reputation.
> ….
> Parmlee did not provide any evidence other than speculation to refute the evidence provided by defendants in support of this motion. As discussed above, conclusory statements made in the pleadings, without any supporting evidence, are insufficient to withstand a motion for summary judgment.

*Parmlee*, 160 F. Supp.2d at 304-06 (citation and footnote omitted).

There is no question that a summary judgment ruling is an "adjudication on the merits," *Flowers v. Connecticut Light & Power Co.*, 2021 WL 5564085 *1 (2d Cir. Nov. 29, 2021) ("An order granting summary judgment constitutes an adjudication on the merits for the purposes of res judicata."); and that the previous action involved Parmlee. So any Title VII claim is barred by res judicata. And even if the Court had jurisdiction over his other claims, they would be barred by res judicata as well because they all arise from events that figured in, and were or could have been the basis for claims raised in, the action in which Judge Fitzsimmons granted summary judgment against him over twenty years ago.

Although a self-represented plaintiff is ordinarily entitled to an opportunity to amend his complaint even after the Court issues a ruling granting a defendant's motion to dismiss, I find that amendment would be futile here. All of Parmlee's claims asserting a breach of the 1994 settlement agreement must be brought against the party to that agreement, i.e., DRS, and the Eleventh Amendment prohibits Parmlee from suing DRS in federal court for breach of that agreement or under any of the other legal theories his complaint might be broadly interpreted to embrace, with the exception of a Title VII claim, which would be barred by res judicata. The Court finds that it would be futile for him to try to plead around those obstacles to raise a cognizable claim over which the Court would have jurisdiction based on the facts set forth in his complaint.

## IV.   Conclusion

For these reasons, the complaint is dismissed with prejudice and the Clerk is directed to close this case. The Clerk is also instructed to amend the docket to add as defendants the list of individuals set forth at ECF No. 1 at 6–10.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       May 9, 2022